IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JONATHAN N. R.,[1]

     Plaintiff,

v.                                          1:25-cv-00193-JMR

FRANK BISIGNANO,[2] Commissioner
of the Social Security Administration,

     Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Plaintiff Jonathan N. R.'s Motion to Reverse

and Remand for a Rehearing, with Supporting Memorandum (Doc. 10), which was fully briefed

on July 24, 2025.  Doc. 19.  The parties consented to my entering final judgment in this case

pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b).  Docs. 3, 6, 7.  Having meticulously

reviewed the entire record and being fully advised in the premises, I find that the ALJ erred by

failing to adequately consider symptoms and limitations related to Plaintiff's obesity in

formulating his RFC.  I therefore GRANT Plaintiff's motion and remand this case to the

Commissioner for further proceedings consistent with this opinion.

---

[1] Due to sensitive personal and medical information contained in this opinion, the Court uses
only Plaintiff's first name and middle and last initials.  In so doing, the Court balances the
Plaintiff's privacy interest in his personal medical information, *United States v. Dillard*, 795 F.3d
1191, 1205–06 (10th Cir. 2015), and the public's interest in accessing the opinion, FED. R. CIV.
P. 5.2(c)(2)(B).

[2] Frank Bisignano became the Commissioner of the Social Security Administration on May 7,
2025, and is automatically substituted as the defendant in this action.  FED. R. CIV. P. 25(d).

## I.    Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[3] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks, brackets, and quotation omitted). The Court must meticulously review the entire record, but it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (quotation omitted). A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* (quotation omitted). While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citation omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*,

---

[3] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981, as it is in this case.

2

489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.    Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process.  20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the evaluation process, the claimant must show:  (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[4] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61.  If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience.  *Id.*

---

[4] 20 C.F.R. pt. 404, subpt. P, app. 1.

**III.     Background and Procedural History**

Plaintiff was born in 1986, completed high school, initially worked in various retail and restaurant establishments, and then worked for eight years as a corrections officer and for three years as a substance abuse technician.  AR 241, 294, 303, 311.[5]  Plaintiff filed an application for Disability Insurance Benefits ("DIB") on May 31, 2022.  AR 240–44.  Plaintiff alleged disability since September 1, 2016, due to injury to the lumbar spine, right hip issues, right knee issues, hypertension, sleep apnea, and a neck injury.  AR 241, 302.  The Social Security Administration ("SSA") denied his claim initially on August 2, 2022.  AR 145–48.  The SSA denied his claim on reconsideration on July 25, 2023.  AR 161–63.  Plaintiff requested a hearing before an ALJ. AR 165–66.  On April 10, 2024, ALJ Michelle Lindsay held a hearing.  AR 99–130.  ALJ Lindsay issued her unfavorable decision on June 11, 2024.  AR 82–98.

The ALJ found that Plaintiff was insured for DIB through December 31, 2021.  AR 87. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 1, 2016, his alleged onset date.  *Id.*  At step two, the ALJ found that Plaintiff had the following severe impairments:  morbid obesity, primary hypertension, and obstructive sleep apnea.  AR 88.  The ALJ found Plaintiff's eczema, fatty liver, enlarged spleen, and depression to be nonsevere impairments.  AR 89.  The ALJ found no evidence in the record to support a medically determinable spinal, joint, or musculoskeletal impairment during the relevant time period.  *Id.*

---

[5] Document 8 is the sealed Administrative Record ("AR").  When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing.  AR 90.  Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Plaintiff's RFC.  AR 90–93.  The ALJ found Plaintiff had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) except the claimant was able to lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently, sit for at least six hours in an eight-hour workday, and stand and walk for six hours in an eight-hour workday.  He could occasionally climb stairs and ramps but could never climb ladders, ropes, or scaffolds. He could occasionally balance, stoop, crouch, kneel, and crawl. He needed to avoid more than occasional exposure to pulmonary irritants such as fumes odors, dust, gasses, and poor ventilation. He needed to completely avoid unprotected heights.

AR 90–91.

At step four, the ALJ found that Plaintiff did not have any relevant work in the past five years.  AR 93.  The ALJ found Plaintiff not disabled at step five because he could perform jobs that exist in significant numbers in the national economy—such as garment sorter, mail clerk, and electronics assembler.  AR 93–94.

Plaintiff requested review by the Appeals Council.  AR 235–37.  On December 31, 2024, the Appeals Council denied the request for review.  AR 1–7.  Plaintiff timely filed his appeal to this Court on February 24, 2025.[6]  Doc. 1.

## IV.    Plaintiff's Claims

Plaintiff raises two arguments for reversing and remanding this case: (1) the Appeals Council erred in rejecting various evidence he submitted for consideration; and (2) the ALJ erred by failing to adequately consider symptoms and limitations related to his obesity in formulating his RFC.  Doc. 10 at 5–26.  The Court finds that the ALJ failed to adequately consider symptoms

---

[6] A claimant has sixty days to file an appeal.  The sixty days begins running five days after the decision is mailed.  20 C.F.R. § 404.981; *see also* AR 3.

and limitations related to Plaintiff's obesity in formulating his RFC.  The Court does not address

the other argument, as it "may be affected by the ALJ's treatment of this case on remand."

*Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

**V.      The ALJ failed to adequately consider Plaintiff's obesity and related symptoms in formulating his RFC.**

Plaintiff argues that the ALJ failed to adequately consider his reported symptoms related

to his obesity.  Doc. 10 at 25.  In addition, Plaintiff asserts that the ALJ cherry-picked portions of

his hearing testimony and his reported activities of daily living, while "omitting statements

supportive of disability."  Doc. 18 at 9.  Finally, Plaintiff argues that the ALJ failed to

demonstrate that she considered all of the evidence related to obesity, failed to explain what

limitations stemmed from his obesity, and failed to show how she incorporated limitations

related to his obesity into his RFC.  Doc. 10 at 24–25.  The Commissioner counters that the ALJ

adequately considered and discussed Plaintiff's obesity in assessing his RFC.  Doc. 15 at 9.  The

Court agrees with Plaintiff and finds that the ALJ did not adequately consider or discuss

Plaintiff's obesity and related symptoms in formulating his RFC.

**a.  Legal Requirements for Considering Subjective Symptom Testimony and Obesity**

When evaluating a claimant's symptoms, the regulations require the ALJ to use the two-

step framework set forth in 20 C.F.R. § 404.1529.  First, the ALJ must determine whether

objective medical evidence presents a "medically determinable impairment" that could

reasonably be expected to produce the claimant's alleged symptoms.  20 C.F.R. § 404.1529(b).

Second, if the first step is met, the ALJ must assess the intensity and persistence of the alleged

symptoms to determine how they affect the claimant's ability to work and whether the claimant

is disabled.  20 C.F.R. § 404.1529(c).  In assessing the intensity and persistence of a claimant's

alleged symptoms, the ALJ must consider all the evidence in the record.  SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017).[7]  This includes the objective medical evidence, statements from the claimant,[8] medical source records (including a longitudinal record of any treatment and its success or failure), and information from non-medical sources.  *Id.* at *6–7.

The ALJ's decision "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."  SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  In addition, the ALJ must "explain which of an individual's symptoms [the ALJ] found consistent or inconsistent with the evidence in his or her record and how [the ALJ's] evaluation of the individual's symptoms led to [the ALJ's] conclusions."  SSR 16-3p, 2017 WL 5180304, at *8.  Finally, the ALJ must discuss the following factors when analyzing a claimant's symptoms:

> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms . . . ; and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *7–8 (citing 20 C.F.R. § 404.1529(c)(3)).  The ALJ "will discuss the factors pertinent to the evidence of record."  SSR 16-3p*, 2017 WL 5180304, at *8.

---

[7] Social Security Rulings are "binding on all components of [the] SSA.  These rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA has] adopted."  20 C.F.R. § 402.160(b)(1).

[8] Statements about symptoms made by a claimant include statements made directly to medical sources, to other sources, and to the SSA.  SSR 16-3p, 2017 WL 5180304, at *6.

In sum, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* "In all cases in which symptoms, such as pain, are alleged, the RFC assessment must[] [c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms." SSR 96-8p, 1996 WL 374184, at *7.

In addition to the regulations for evaluating a claimant's symptoms, the SSA provides specific guidance that ALJs must follow when considering obesity at each step of the sequential evaluation process. SSR 19-2p, 2019 WL 2374244 (May 20, 2019). The guidance cautions that "the effects of obesity combined with other impairments can be greater than the effects of each of the impairments considered separately." *Id.* at *2. When assessing the claimant's RFC, the ALJ must consider obesity and must explain how she reached her "conclusion on whether obesity causes any limitations." *Id.* at *4. The ALJ is instructed to consider how obesity limits both exertional functions (sitting, standing, walking, lifting, carrying, pushing, and pulling) and non-exertional functions (climbing, balancing, stooping, kneeling, crouching, and crawling). *Id.* The ALJ is also instructed to consider how obesity can increase stress on weight-bearing joints, contribute to limitations in the range of motion, affect a person's ability to manipulate objects, and affect a person's "ability to tolerate extreme heat, humidity, or hazards." *Id.* Finally, the ALJ's RFC assessment must "show the effect obesity has upon the person's ability to perform routine movement and necessary physical activity within the work environment." *Id.* The ALJ is cautioned that "[p]eople with . . . obesity may have limitations in the ability to sustain a function over time. In cases involving obesity, fatigue may affect the person's physical and

mental ability to sustain work activity.  This may be particularly true in cases involving obesity and sleep apnea." *Id*.

### b.  Plaintiff's Subjective Symptom Testimony and Testimony About Obesity

Plaintiff described his symptoms in detail both in his function report and at the ALJ hearing.  AR 82–98, 319–26.  Plaintiff testified that he weighed between 450 and 500 pounds and that his obesity affects both his mental and physical health, and causes numerous symptoms and limitations.  AR 106, 110–23.  Plaintiff testified that his obesity exacerbates his depression; sleep apnea; numbness and tingling in his arms, legs, and feet; numbness and loss of muscle strength in his hands; pain in his neck, thoracic spine, mid and low back, hips, knees, shoulders, forearms, wrists, hands, and fingers.[9]  AR 110, 112–13.

Plaintiff testified that his symptoms and limitations affect his ability to complete activities of daily living.  Plaintiff testified about his difficulties caring for his three children and completing household chores.  AR 118.  In his function report, Plaintiff stated that his oldest son helps care for his younger siblings when "I am in to[o] much pain."  AR 320.  Plaintiff testified that he can drive his children to school and "do some basic things as far as . . . helping to prepare meals, but even then, I can't do that completely on my own."  AR 118.  He testified that he does dishes and some meal preparation, but due to fatigue and pain, he often has to rely on his wife and children to complete these tasks.  *Id.*  ("I'm not able to complete [those] task[s] from A to Z. . . . I can only do certain things and then I either run out of energy or my muscles are so inflamed or I have so much pain that I have to ask for help to complete those tasks.").  In his function

---

[9] Plaintiff's function report stated that he had "continual pain and spasms in [his] back, shoulders, neck, hips, sciatic nerve, glutes, groin, legs, and feet."  AR 319.  Plaintiff reported that his pain levels varied day to day.  "On good days, [he was] able to spend time w[ith his] kids and make appointments and complete small household tasks.  On bad days, [he] usually spen[t] most [of his] time sitting or l[]ying down trying to manage pain."  AR 320.

report, Plaintiff states that he prepares only simple meals like sandwiches, pasta, or pre-made microwavable meals, and that he often has to sit to prepare meals due to his pain, and always has to take breaks to shake out his hands because they are numb.  AR 321.  "The kids will usually put dishes away while [he] wash[es] or vice versa because [he] can't do both."  *Id.*  Plaintiff further testified that his oldest two children and his wife handle the grocery shopping and the "majority of heavy things around the house."  AR 123.  His ability to do chores is limited by pain, and the need to do things at his own pace.  *Id.*

Plaintiff also testified about his difficulties maintaining a consistent pace in his part-time job.  Plaintiff works from home ten hours a week as an assistant to a church worship ministry director.  AR 107.  Plaintiff selects music, creates music charts for the worship team, and helps the worship minister with various administrative tasks.  *Id.*  Plaintiff testified that he is able to maintain this part-time employment only because his employer accommodates his limitations by allowing him to work at his own pace, and to take breaks and days off as needed.  AR 111.  Plaintiff testified that even when doing "mild things" he has to take intermittent breaks to stretch or lie down, and that he stops typing periodically to stretch and shake out his hands.  *Id.*  He testified that he has two to three "good days" per week where he has " a little bit more energy to try to function in somewhat of a normal capacity."  AR 116.  Even on the days Plaintiff is able to work, he only works between an hour and three hours a day, "all broken up over, you know, the time that I need to take a break or things of that nature."  AR 124.

Plaintiff testified that he has numbness and loss of muscle strength in his hands.  AR 115.  His function report also reports "intermittent numbness/tingling and pain in [his] hands and arms."  AR 319.  He testified that he often drops things due to weakness, numbness, and muscle spasms in his hands.  AR 116.  Plaintiff states that on bad days he is unable to comb his hair, put

10

his hair in a ponytail, pull up his pants, put on his socks and shoes, or shave.  AR 115, 320.  His wife often has to help him with these activities of daily living.  *Id.*

Plaintiff testified that he has numbness and tingling in his feet and legs.  AR 133.  He stated that his legs go numb when he is sitting, driving, working on the computer, and using the restroom.  AR 116.  Plaintiff stated that he has to shake out his extremities constantly to restore blood flow and feeling.  *Id.*

Plaintiff testified that he was only able to walk for ten to fifteen minutes without taking a break to rest.[10]  AR 111–12.  He testified that he was only able to sit for twenty to thirty minutes at a time, but even this would require constant adjustment.  AR 120.  He testified that he needs to change positions every ten to fifteen minutes.  AR 113.  His function report also states that "[d]ue to chronic pain[,] [he] constantly ha[s] to reposition [him]self[,] which [a]ffects [his] ability to stand, sit, or walk for long periods of time."  AR 319.  He testified that he could concentrate for an hour at a time.  AR 117.

### c.  Analysis

#### 1.  The ALJ failed to adequately consider or discuss Plaintiff's subjective symptoms— including those related to his obesity—in formulating his RFC.

The ALJ's step one analysis of Plaintiff's symptoms is legally insufficient.  Step one requires the ALJ to determine whether objective medical evidence presents a medically determinable impairment ("MDI") that could reasonably be expected to produce the claimant's alleged symptoms.  20 C.F.R. § 404.1529(b).  At step one, the ALJ in the instant case found only that "claimant's medically determinable impairments ["MDIs"] could reasonably be expected to cause **some** of the alleged symptoms."  AR 91 (emphasis added).  The ALJ fails to explain what

---

[10] Plaintiff's function report states that he is able to walk for five to ten minutes before needing a ten-minute break.  AR 324.  This discrepancy does not affect the Court's analysis.

is encompassed by "some."  The ALJ does not explain which symptoms Plaintiff's MDIs could be expected to cause and which they could not be expected to cause.  This is insufficient.  *See Sarabia v. Kijakazi*, 2:21-CV-01085-LF, 2023 WL 2665555, at \*4 n.6 (D.N.M. Mar. 28, 2023) (finding error in part because "the Court cannot discern from the ALJ's decision which physical symptoms the ALJ found were supported by the medical evidence, and which were not"); *Bailey v. Kijakazi*, 20-CV-1163 KK, 2021 WL 5865614, at \*10 (D.N.M. Dec. 10, 2021) (finding error because "the ALJ did not discuss all of [Plaintiff's] symptoms, and the Court does not know whether he left some of them out because he found the impairments that caused them were not medically determinable, or for some other reason").

The ALJ's step two analysis of Plaintiff's symptoms is also legally insufficient.  At step two, the ALJ failed to discuss evidence about Plaintiff's symptoms pertinent to the seven regulatory factors, despite the requirement that she do so.  *See* 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2017 WL 5180304, at \*8 (the ALJ "will discuss the factors pertinent to the evidence of record").  Indeed, the ALJ did not discuss the bulk of Plaintiff's testimony about his symptoms and limitations.

The ALJ failed to discuss Plaintiff's detailed testimony about the location, duration, frequency, and intensity of his pain and other symptoms, despite the requirement that she do so.  20 C.F.R. § 404.1529(c)(3)(ii).  Plaintiff reported pain in his neck, thoracic spine, mid and low back, hips, knees, shoulders, forearms, wrists, hands, and fingers.  AR 110, 112–13.  Plaintiff also reported "continual pain and spasms in [his] back, shoulders, neck, hips, sciatic nerve, glutes, groin, legs, and feet."  AR 319.  Plaintiff reported that his pain levels varied day to day; on good days he could complete limited household tasks, but on bad days he had to sit or lie down most of the day to manage his pain.  AR 320.  The ALJ's decision contains no meaningful

12

summary or discussion of Plaintiff's testimony about his pain and related limitations.  Instead, the ALJ states only that Plaintiff "alleged chronic pain, joint pain, fatigue, and numbness and tingling in his extremities."  AR 91.  And, in the next sentence, the ALJ seems to summarily dismiss Plaintiff's complaints of pain— stating that "[c]hiropractic treatment helps his pain and blood circulation and gives him more energy."  *Id.*  The ALJ failed to discuss Plaintiff's testimony about the location, duration, frequency, and intensity of his pain.

The ALJ also failed to discuss Plaintiff's testimony about how his symptoms and limitations affect his daily activities, despite the requirement that she do so.  20 C.F.R. § 404.1529(c)(3)(i).  Despite Plaintiff's detailed testimony about how his symptoms limit his daily activities, the ALJ stated only that "claimant alleged limited daily activities."  AR 91.  Later in the decision, without acknowledging or discussing the specific limitations Plaintiff testified to in relation to his daily activities, the ALJ stated that "[d]espite his combined impairments and symptoms, the claimant has been able to . . . care for his own personal needs, care for his children . . . prepare food, [and] do household chores."  AR 92.  While lacking any analytical language, it appears that the ALJ cites these activities to support her finding that Plaintiff is less limited than he testified and is capable of an RFC for light work.  However, in finding that claimant can care for his own personal needs, the ALJ omits Plaintiff's testimony that on bad days he is unable to comb his hair, put his hair in a ponytail, pull up his pants, put on his socks and shoes, or shave.  AR 115, 320.  And in finding that Plaintiff can care for his children, prepare food, and do household chores, the ALJ omits Plaintiff's testimony that he has difficulties caring for his three children and completing household chores due to pain and fatigue; that his oldest child often has to help him care for his younger children; or that his children and wife have to help him complete simple chores such as cooking or doing dishes.  AR 118, 123, 320, 321.  The

13

ALJ failed to adequately discuss Plaintiff's testimony about how his symptoms and limitations affect his daily activities.

The ALJ failed to discuss Plaintiff's testimony about things that precipitate and aggravate his symptoms, including his pain, despite the requirement that she do so. 20 C.F.R. § 404.1529(c)(3)(iii). The ALJ also failed to discuss the measures other than treatment that Plaintiff uses to relieve his pain or other symptoms while working. 20 C.F.R. § 404.1529(c)(3)(vi). Plaintiff testified he has problems maintaining a consistent pace in his ten-hour per week job, and that working without being able to take breaks precipitates and aggravates his pain. Plaintiff is able to deal with this exacerbation of pain in his current job because he is able to take intermittent breaks to stretch or lie down, and to shake out his hands. AR 111. In addition, he is able to choose which days he works and completes only one to three hours of work per day, as tolerated. AR 111, 116. The ALJ did not discuss any of the ways Plaintiff said his work aggravated his symptoms, nor did the ALJ discuss any of the accommodations Plaintiff uses to deal with his symptoms in a work setting. Indeed, the ALJ's decision contains only two sentences about his current work, neither of which acknowledge the challenges Plaintiff has in completing his workday. First, the ALJ stated that Plaintiff "is currently working part-time as an assistant to the Ministry Director at a church." AR 91. Second, the ALJ stated that "[d]espite his combined impairments and symptoms, the claimant has been able to work part-time." AR 92. This ALJ's perfunctory discussion falls far short of what is required.

The ALJ failed to adequately discuss Plaintiff's reported symptoms using the regulatory factors for considering Plaintiff's reported symptoms, despite the requirement to do so. *See* SSR 16-3p, 2017 WL 5180304, at *8 (the ALJ "**will** discuss the factors pertinent to the evidence of

14

record") (emphasis added).  Indeed, in addition to being legally insufficient under the regulations, the ALJ's failure to acknowledge Plaintiff's testimony suggests that she has cherry-picked the evidence rather than assessing all of the evidence.  *See Staheli v. Commissioner*, *SSA*, 84 F.4th 901, 907 (10th Cir. 2023) (ALJ may not "cherry pick" portions of evidence supporting her decision, using portions favorable to her position while ignoring other evidence).

### 2.  The ALJ's discussion of the treatment records is legally insufficient.

The ALJ's discussion of Plaintiff's treatment records is legally insufficient and cannot salvage the ALJ's deficient analysis of Plaintiff's symptoms.  The ALJ asserts that Plaintiff's "statements about the intensity, persistence, and limiting effects of his symptoms" are inconsistent with treatment records.  AR 91.  The ALJ goes on to assert that "treatment records during the period at issue do not reflect pain, fatigue, or any other symptoms of a severity or frequency that would have prevented the claimant from performing at least light work."  *Id.* However, as discussed above, the ALJ did not adequately consider or discuss Plaintiff's "statements about the intensity, persistence, and limiting effects of his symptoms."  Thus, when the ALJ says that Plaintiff's statements are "inconsistent with treatment records" it is not clear to which statements the ALJ refers.  The ALJ's decision lacks the clear articulation needed for the Court to follow the ALJ's reasoning.  *See* SSR 16-3p, 2017 WL 5180304, at *8 (The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.").

The ALJ's discussion of Plaintiff's treatment records (AR 91–92) is problematic for two additional reasons.  First, an ALJ cannot reject a Plaintiff's subjective symptom testimony on the basis of objective medical evidence alone.  *See* SSR 96-8p, 1996 WL 374184, at *7 ("In all cases

15

in which symptoms, such as pain, are alleged, the RFC assessment must[] [c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms."). As discussed above, the ALJ failed to adequately discuss Plaintiff's complaints of pain and other symptoms. Second, "[i]t is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quotation omitted). In evaluating a claimant's subjective symptom evidence and other matters, an ALJ must discuss not only "the evidence supporting his decision," but also "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Here, the ALJ cited only medical records supporting a finding of non-disability, while ignoring others that would lead to a finding of disability. The ALJ claimed that "there was **no** medical support for [Plaintiff's] allegations of severe symptoms or functional deficits." AR 92 (emphasis added). This statement is not true. The ALJ failed to discuss treatment records from the relevant period documenting pain, fatigue, and other symptoms consistent with Plaintiff's symptom testimony.

For instance, Plaintiff points out that the ALJ failed to discuss his treatment records from his chiropractor, Dr. Jeffrey Schnapp, during the relevant period.[11] Doc. 18 at 10. The Court agrees that the ALJ failed to adequately discuss these records which corroborate Plaintiff's reported symptoms and functional deficits. For example, on January 16, 2017, Plaintiff reported to Dr. Schnapp that his pain was a six out of ten, including numbness in his hands, stabbing pain in his right shoulder, and aching pain along his cervical spine and in his lower back. AR 565.

---

[11] The Court notes that Dr. Schnapp's handwriting is very difficult to read. Nonetheless, this does not excuse the ALJ from considering these records.

16

On examination, Dr. Schnapp assessed paraspinal myospasm/hypertonia in Plaintiff's cervical and thoracic paraspinals, right rhomboid, erector spinae, and right upper traps, as well as pain and tenderness on palpation in his cervical and thoracic spine.[12]  AR 567.  Dr. Schapp found misalignment in the following regions of Plaintiff's spine:  C3, C6, C7, T2, T3, and T4.  *Id.*  Dr. Schnapp diagnosed Plaintiff with cervicobrachial syndrome, segmental and somatic dysfunction in the cervical and thoracic regions, and muscle spasms.[13]  AR 567.  Further visits with Dr. Schnapp during the relevant time period continued to show areas of paraspinal myospasm/ hypertonia and areas of spinal tenderness/irritability/segmental dysfunction.  AR 569, 572, 574, 577, 579, 580.  On October 13, 2021, Dr. Schnapp provided Plaintiff with trigger point injections to treat his pain.  AR 582, 587.  On November 8, 2017, Dr. Schnapp prescribed Plaintiff a muscle relaxant and a nonsteroidal anti-inflammatory medication for pain and inflammation.  AR 571.  Despite Dr. Schnapp's treatment records supporting Plaintiff's subjective symptom complaints, the ALJ never discussed them in her decision.

Plaintiff also points out that the ALJ failed to discuss treatment records from the relevant time period documenting his obesity and fatigue.  Doc. 10 at 21–22.  The ALJ's failure to discuss the medical evidence related to Plaintiff's fatigue is particularly problematic given Plaintiff's

---

[12] Dr. Schnapp, a chiropractor, is not considered an "acceptable medical source;" therefore his diagnoses cannot establish the presence of a medically determinable impairment.  20 C.F.R. §§ 404.1502(a), 404.1521.  Nevertheless, Dr. Schnapp is still a medical source, 20 C.F.R. § 404.1502(d), and his treatment notes contain both "objective medical evidence" and "other medical evidence" that the ALJ is required to consider in reaching her conclusions, 20 C.F.R. §§ 404.1513(a)(1), (3).

[13] Dr. Schnapp listed ICD 10 codes of M53.1, M99.01, M99.02, and M62.838.  AR 567.  These codes correspond to the diagnoses listed above.  ICD-10-CM CODES LOOKUP, *Codify at AAPC,* https://www.aapc.com/codes/icd-10-codes-range/?srsltid=AfmBOop2-fZF_FFG4CfUgYbKeqVQHsiAOdUSExVcKOiAfKdcxSS1-ui5 [https://perma.cc/G5RB-XJ4A].

morbid obesity. *See* SSR 19-2p, 2019 WL 23742344 at *4 ("[p]eople with . . . obesity may have limitations in the ability to sustain a function over time. In cases involving obesity, fatigue may affect the person's physical and mental ability to sustain work activity. This may be particularly true in cases involving obesity and sleep apnea.") The ALJ stated that Plaintiff's "sleep apnea may result in some fatigue; however, the medical evidence suggests it was reasonably controlled with CPAP and BiPAP with no evidence of pulmonary impairment." AR 91–92. The ALJ then went on to state that "[t]here was no medical support for [Plaintiff's] allegations of severe symptoms or functional deficits." AR 92. The ALJ, however, once again "pick[ed] and ch[]ose among medical reports, using portions of evidence favorable to [her] position while ignoring other evidence." *Carpenter*, 537 F.3d at 1265. For example, the ALJ did not discuss Plaintiff's November 14, 2017 medical visit noting diagnoses of class three obesity, obstructive sleep apnea, and "malaise and fatigue."[14] AR 482–83. The ALJ also did not discuss his December 6, 2017, visit to the Lovelace Sleep Disorders Clinic where he reported obstructive sleep apnea for approximately seven years, that had been worsening over the previous twelve months. *Id*. Plaintiff reported sleep episodes seven days a week, awakening with shortness of breath, difficulty maintaining sleep, nightmares, and weight gain. *Id*. It was also noted that he experienced awakenings, moderate excessive daytime sleepiness, unrefreshing sleep, and difficulty with concentration and memory despite being machine compliant. AR 477. He was diagnosed with severe obstructive sleep apnea "associated obesity BMI > 35, hypertension, and neck circumference size > 17 inches [for] men." AR 477–78. On January 16, 2018, Plaintiff reported many of the same problems, including fatigue, and stated that he was awaiting a new

---

[14] The treatment notes indicate that Plaintiff was already on a CPAP machine. AR 483. Because he continued to have fatigue and malaise, he was referred to a sleep doctor to upgrade his equipment for managing his obstructive sleep apnea. AR 480.

machine.  AR 470.  On March 27, 2020, Plaintiff was again diagnosed with "malaise and fatigue."  AR 412.  Indeed, Plaintiff continued to complain of sleep problems even after the relevant time period.  AR 737–39 (August 24, 2023 provider visit noting continued sleep issues despite use of a BIPAP machine, with referral to a sleep clinic for follow up).  The ALJ failed to discuss medical evidence supporting Plaintiff's reported symptoms of fatigue.  In addition, the ALJ failed to cite any medical evidence to support her claim that Plaintiff's sleep apnea "was reasonably controlled with CPAP and BiPAP."  AR 91.

The ALJ's discussion of Plaintiff's treatment records is legally insufficient and cannot salvage the ALJ's deficient analysis of Plaintiff's symptoms.  In addition, the ALJ impermissibly cited only medical records supporting a finding of non-disability, while ignoring others that would potentially lead to a finding of disability.  Accordingly, the Court will remand this case for proper consideration of all of Plaintiff's symptoms.

## VI.  Conclusion

The ALJ erred by failing to adequately consider and discuss Plaintiff's symptoms and limitations stemming from his obesity in formulating his RFC.  The Court remands so that the ALJ can remedy this error.  The Court does not address Plaintiff's other claim of error as it "may be affected by the ALJ's treatment of this case on remand."  *Watkins*, 350 F.3d at 1299.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reverse and Remand for a Rehearing, with Supporting Memorandum (Doc. 10), is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
JENNIFER M. ROZZONI
United States Magistrate Judge
Presiding by Consent

19